All rise. Element of the Court of Fifth Division now to session. Now to Justice Robert E. Horne is presiding. Good morning to all. Everybody can be seated. Page 16, 1765. Stewart Title Guaranty Co. The lawyers who are going to argue the case, please approach the bench and introduce yourself to the court. Good morning, Your Honors. David Epstein for the appellant Josephine White. Good morning, Your Honor. John Burke on behalf of the Appellee Stewart Title Guaranty Co. Okay. How much time does the appellant want for rebuttal? I'll reserve the maximum for rebuttal, Your Honor. All right. Five minutes. Okay. Let's proceed. Can I just ask you to keep your voice up because that is not a mic. It just records your voice. Usually my voice travels pretty well. All right. But you never know. Your Honors, this is ultimately a simple insurance case. The Stewart Title insured Ms. Wade's purchase of the 4120 West Washington property ten and a half years ago. This case has been around now approaching 11 years. Well, the case didn't start until 2013, so, right? I mean, you filed in 2013? No, this case started in 06. Okay. All right. I mean, I know the property was bought in 06. The property was bought in 06. Ms. Wade had put $110,000 of her own money in from selling another place. Can I just interrupt because we know, you know the facts, Judge Gordon? Yes. We know the facts. Really, if you can argue to us why the appellee should not have won and why you showed that I think it's reasonable diligence was utilized in this case to settle the encumbrance, or to remove the encumbrance. There was, in this case, never, ever a question of the validity of the clout on Ms. Wade's title. Never. It was never raised. It was never litigated. It was never argued. And, instead of as many of the cases that they said... You know what we're looking for? Let me explain. Pardon? What did the trial court do wrong? The trial court did really three things wrong. First, I think it got the facts wrong in that it assumed that the title company was legitimately litigating something valid. They were not. The title company is entitled, under the policy, under the language of the policy, to litigate to clear title, to ensure the owner's title to the property. That's not what they did. And that was mistake number one. They were litigating the priority of the second mortgage, which could never, ever... Even assuming it was a non-frivolous case, which it was not. It was solely frivolous under Illinois law. And, in fact, in almost every state. But they were not litigating to cure the title. That they could have done. And then we have an argument, was it too long, was it too short? That's not what they did. Well, what evidence do you have that that is not what they did? Because all they did was bring the equitable subrogation case, and if they had won the equitable subrogation case, all that would have done would be to subordinate the $39,000 cloud on title, their problem, to the later mortgage that they also insured by them. Did your client ever ask them to write over it? Insure over it? They did insure over it. Okay. That's not the issue here. That's the starting point. They did insure. They blew it. They missed it in a simple title search. They missed it. This is the simplest case. No, we know what the cloud on title was. Okay. We're looking to see if the court did anything wrong, if they made an error, serious error. The court denied liability. I don't know why. It was a clear case of the title company going off and serving their own interests. What evidence do you have that they denied liability? The court entered judgment and denied it. The court didn't say, here's... I mean, did you have a document that they claimed that they denied liability that you offered as evidence at trial? The judge's verdict was a denial of liability. That's not a paper you submit to the court. That's the judge's decision. No, no. You just said that the insurance company denied liability. No. I said the court, in response to your question, I said the trial judge denied liability. I thought that's what you were asking. I may have misheard you, but that's what I thought you were asking. No. The problem here is that you have a qualitative, not just a quantitative, lack of diligence that extends over time, although you have that too. What you have is, instead of setting the case, instead of paying off the $39,000 mortgage, or indemnifying, or escrowing the money and going and litigating, but removing the... Instead of doing their insurance duty, they litigated priority. Now, let's look at that for a second. What they did do, and all they did, was the most that could have happened. The most that could have happened is, if the court had agreed to subordinate the mortgage, then you would have had the $39,000 mortgage being second to the new $77,000 mortgage of Amalcomated Bank. What's the total of those two mortgages? $116,000. Unless the value of the property became less than $116,000, it wouldn't have helped the title company. It wouldn't have helped settle the case. So they were banking. They were dragging this out and banking on the property on the West Side, lowering in value until they could settle their case cheaply. That doesn't help. They put their own interests ahead of their insurer, and that's the problem. And all of the arguments about the value, as the case law firmly holds, they insured for $179,000, and the value of their insurance doesn't change because the market value changes. And that's the other mistake the judge did. He looked for proximate cause. It's not proximate cause. This is, the value of the property is not what it is. It's the lay. You pay the value of the insurance. This woman, who is a businesswoman, formerly in the insurance industry, she goes in and tries to rehab a piece of property in Chicago. And she relies, like Malcolm Eddard Bank did in lending her money, on the title. She relies on the title insurance. They rely on the title insurance. That's how we do it in Illinois. That's how we do it in 49 of the 50 states. And what happens? They say, oh, give me a couple of years, we're going to litigate. For our own benefit, not for your benefit. Can I just, from what I've read, and I've only read this once, so if I'm wrong, you stop. She got the house in 2006. She signed a contract and got, I think used $111,000 of her own money, $77,000 for a loan from Amalgamated Bank. She had this contract to insure the title, the Stewart title. And they agreed to, well, they had choices as to how they would proceed. They didn't have to just settle a case right out. They could litigate a case if they thought that that was the proper thing to do. They could appeal the decision if they did not like the decision. The contract, as I read it, says that when Ms. Wade found that there was a problem, and she found it very quickly, I think maybe this is a November purchase, 06, and a December occasion when she found the cloud on the title. The contract says she's supposed to give them the written notice of the cloud right away, and the judge found there's nothing in the record. This shows that she gave written notice. There's nothing in the record that when she testified about giving other than an oral notice at a location where the contract doesn't tell her to give notice. So we have that error on the complaining witness. The defendant in this case presented evidence that they didn't get notice until December of 07. So over a year has gone. That's not attributable to them. They don't get notice, and it's not even at the right place, according to the uncontested testimony. Once they get notice, they start trying to resolve this matter. I mean, you're shaking your head no, but you tell me why they didn't start, because it seems like to me in 18 months that from the time they got notice in December of 07, until maybe June or July of 09, they had gotten rid of the $39,000 loan, maybe for 15, the encumbrance for $15,000. Ms. Wade's mortgage loan that she got from Amalgamated for $77,000. They had resolved that matter, and I can't remember the amount, but it was certainly I think maybe $40,000. The figure may not be correct. So they were doing everything to clear her title. And by, you're shaking your head no, but can I finish? Because you have to tell me how I'm wrong. This is from what I read from the briefs and the record. And then in 09, once they cleared those things off of the record, I think there's something with the city. They litigated, yeah, they litigated for her a code violation and got that resolved. You're shaking your head, but the record says these things are resolved. So when I'm finished, because if these facts are wrong that I have in my head, I want to know. They resolved the code violations, they said. Don't let anybody get into it, and we don't give you a fine. So all of that's done, I think, by December of 09. They just say keep the house, as I said, secure. And then she doesn't keep the house secure. And then the city comes back in, and then they demolish the house because someone's broken in, they set a fire in it, those kinds of things. Now, you tell me, what of those facts that I've said are wrong? Because if those are the facts, it seems that they used reasonable diligence in clearing the title. The title was, I mean, the property was then capable of being rehabbed between 2009 and 2012 when the city said they were going to demolish it. You have three things wrong in your recitation. The most important, in case I run out of time, is you're saying that they were trying to resolve the claim, and that is not true. They were not trying to resolve the claim. If they had challenged, if they had challenged the legitimacy of the $39,000 missed mortgage, I would say, then you'd be right. They resolved that claim. No, they didn't resolve it. What they did is they cut the price. They only were saving themselves money. They weren't trying to resolve it. And that's my point. Had they won that, had they won their case, it wouldn't have been worth the mortgage. My point is that they had to pay the entire amount off right away. They had to pay or resolve the $39,000 mortgage. They didn't have to pay or resolve the amalgamated mortgage for her. They could have resolved the $39,000 mortgage either by challenging it, and even now there's no claim that that was a bad lien. It was a good lien. Yeah, nobody's challenging the lien. That's my point. The contract in 4B, which allows them to litigate, only allows them to litigate necessary or desirable to establish the title of the estate as insured. Only. That's not what they were doing. If they were doing that, this would be a different case. So they weren't clearing their title by doing those things? No. Okay. That's the point. That's the key point in the case. That's what makes this case different from all the cases that they cite where title companies are prepared. The title companies in those cases were challenging a claim of a neighbor, a defect in title. They were challenging the defect, challenging the cloud. This is a cloud case. They're not challenging the cloud here. All they're trying to do is make it cheaper to sell. And that, the contract does not allow them to do, which is why the entire, whether you call it 18 months, if you stick with that, and by the way, that's the second thing you're wrong, the contract does not strictly require written notice. All notice is sufficient unless they're prejudiced. They haven't claimed. It's not in the contract. Okay. So I'll have to look at it again. And the third thing is, they didn't win the city's enforcement case, as you point out. The city eventually demolished the property. The property was in gangbanger territory because of the decrease, because the real estate situation on the west side went to heck in a handbasket, which I guess I just made up. I think you're mistaken on the question of the notice. There's a provision in the policy, I remember. Yeah, but they can't, if you look at paragraph three, failure to notify the company shall not prejudice the rights of the insured unless the company shall be prejudiced by the failure and then only to the extent of prejudice. Nobody's claiming prejudice to the title company by the oral notice. Nobody's claiming the oral notice. The oral notice wasn't made to this particular title company. It was made to an agent of this title agency. Well, you didn't prove that at trial. Well, but eventually. And another thing you didn't prove at trial is the conduct of the insurance representative as to why they did this, why they did A, why they did B. You didn't put on the stand any representative, call them as an adverse witness, and find out why they were doing what they did. Well, we put the claim supervisor on, and she said they handled this like any other case. They litigated instead of selling. It's an autonomic response. Well, those cases that hold it, title companies have the discretion to settle cases, try to get a better price. That's what they do in insurance cases all over, forever. If they were settling on the basis of the lien being invalid or disputable, I would say you're right. There's no case that says that. There's no case that says that. But let's assume that everything you say is true, okay, for the sake of argument. Everything you say is true. What are your damages here? Our damages is that we couldn't rehab the property. We lost everything. This is, wait a minute, but by whose conduct did you lose everything? By their conduct in not clearing title. We couldn't take down the rest of the amalgamated loan. You have the document in the record. Amalgamated says you do this, we fund the rehab. And look, you have to clear this $39,000 mortgage before we will give you the money. Well, your client had an obligation to keep the property secure. They allowed people to live there. They allowed a fire to occur. They did nothing to secure the property. The property became in such terrible disrepair that it ended up in demolition. Well, Your Honor, with all due respect, it is not established on this record that we allowed any of those things. She bought up the property. She put in new windows. You have people coming back. What you're suggesting, with all due respect, Your Honor, what you're suggesting is if she were a wealthy developer and had the money to do it without the loan, she might win. But because she didn't have the money and was relying on the refinancing from amalgamated bank, she loses because she couldn't keep up with the kids in the neighborhood who would go in there and smoke and destroy the property. Well, I guess in Chicago, if that's going to be the law in Illinois, then why over the title charge? You know, it's easy to say when a person has certain obligations that they didn't perform them because they didn't have the funds. And why was that a defense? Why was that a defense? Wait a minute. I haven't got to my question yet. Did she ever notify the title company that she wanted the title to be cleared within a specific time so she could get a loan to rehab the property? I believe her lawyer did. There's nothing in the record that shows that? There's nothing in the record. That was part of the defense. They were never asked to, and I can't think of the terminology that you used, to give some kind of insurance, to have somebody else underwrite insurance for that so she could get the loan. Why is it up to the insured? You make a claim and you say pay the claim. It's then up to them to resolve the claim. You're saying, oh, you've got to tell them exactly what you want and when you want it? Where's a case saying that? With all due respect, that puts the burden on the wrong party. This is supposed to be insurance. This is supposed to be insurance. If I have a car accident, do I have to tell the insurance company I want your check next Tuesday at 4 o'clock? And they breach the agreement if they don't do it? That's not the way it's arranged. Now, there may be circumstances in which you may do that. There may be circumstances in which you have to do that. Why is that something that is a condition of this policy? Here's the policy. That's not in there. Because the case law says that the insurance company has discretion in how to handle their claims. So if you don't like what they're doing, you have an obligation to tell them that. That's what is done in the insurance industry day in and day out. Under this policy, under this language, the only discretion they have to litigate, the only one is in 4B that says to insure the title. Now, the case law makes it a condition to dispose of the claims. They have the right to dispose of the claims in a reasonable manner. And the question, what is reasonable? And coming in with a nonsense equitable subrogation claim is reasonable? They come in with a partial payoff. Illinois law is absolutely firm. No partial equitable subrogation. They come in with a voluntary payoff. Not an involuntary payoff. Equitable subrogation only applies to voluntary. They come in and say, we're going to try and hopscotch over a second mortgage. That was their claim. We're going to subordinate the second mortgage, which had become a first mortgage, under the Illinois statute. And they say, hey, my client didn't have any money, so therefore she couldn't keep the mortgage. Now, I'm arguing that what this title company did was try and save themselves a few bucks, by which, by the way, they didn't succeed. Instead of fulfilling their duty to their insured, they used a self-serving interest. And Illinois law is clear. An insurer cannot put their own interest before their insured. And that's what we're asking this Court to uphold. And if this Court goes the other way on this case, then you will be departing from Illinois law in favor of title insurance companies. And the answer will be, why buy title insurance? It isn't worth anything. I, personally, have never departed from Illinois law in any case that I've been in. Then you should be ruling for us. And I hope you do. Why don't you save some time for rebuttal? And my time has expired. All right. Good morning, audience. May it please the Court. Again, John Burke. I'm here with my associate, Nick Castro. We tried the case before Judge Snyder. There are two issues on appeal, Your Honors. The first issue is, did the trial court abuse its discussion when it found that Stuart Title did not breach its contract of insurance? And secondly, even if there were a breach, did such breach cause damage to the insured? And Judge Snyder correctly found in both instances there was no breach and there was no causation. With respect to the notice, Justice Lankin, you correctly noted that we didn't receive notice until either December or January of 2009. And upon written receipt, which is required by the notice provisions, we acted. Now, they said, here, what prejudice to you if we gave you all? Well, you wouldn't be able to hear he said, she said about whether or not notice was given to some person at some unnamed location at some undisclosed time. When we got it in writing, we reacted. And the prejudice here is they're trying to stretch the time period in which we had the claim to a disadvantage. When actually, we didn't get it until January of 2008. We responded immediately in writing. And by the summer of 2009, the title was clear. We had paid off the Deutsche Bank lien. And by December of 2009, the housing court case was dismissed by agreement through the good efforts of a lawyer that we paid for and that we had hired. And the property was free and clear of all liens and encumbrances. Even more, the amalgamated bank, which was her mortgage that she had to get into the property in the first place, her $77,000, that was paid off. So by January of 2010, there was no first mortgage. The very mortgage she used to acquire the property, the Deutsche Bank lien was gone, and the housing court case was resolved. So her counsel said, well, she didn't have money to do this. Well, she knew when she bought the property, she needed money to rehab it. And even to her advantage, she no longer had to pay interest and principal on her first mortgage because that's been paid off. So now she had the cash flow, if not to rehab the property, at the very least to keep it up and maintain it and secure it as she agreed and as she was supposed to. During the time period, there was no notification to Stewart Title that she was trying to rehab the property and or that the Deutsche Bank lien was an obstacle. Had there been such a notice, then, Justice Wharton, you correctly pointed out, we could have titled over that. Or, Justice Lankin, as you said, we could have given an indemnity letter to Chicago Title or First American, another title company, and taken care of it that way. And this whole argument about equitable subordination or equitable subrogation was not raised in the pleadings. It was not argued below until the written closing arguments that were submitted after the trial. So if the record is incomplete about what did we do or what should be done in the mortgage foreclosure lawsuit, that fault lies on the upper end for not making a complete record before Justice Slater. They may disagree with our argument about equitable subrogation, but you can't conclude that it was effective. I mean, you can't argue it was effective. Deutsche Bank lien, if it had a valid and first mortgage, would not have settled for $15,000. We understood as a result of our assertion of the argument about the equitable subrogation that they were at risk of ending up in second place on a piece of property that was worth between $25,000 and $35,000. And so they settled. And we cleared it within 18 months. We did everything we were supposed to do. We acted reasonable under the circumstances. We set cases where courts say longer time to clear was actually reasonable. They've said in no cases, no facts, saying that what we've done under these circumstances was unreasonable. And as of January 2010, telling me, they didn't sue us then. How could they? Because if they went to court in January 2010, everyone would say, what damages do you have? You have your property. It's pretty clear of all needs and encumbrances. They wait three years, do nothing with the property, and they try to stick us with the loss, and they can't do that. Under Section 7 of the policy, Stuart Title is only responsible for actual loss, not consequential damages, which they're trying to stick us with here. And that's clear. So, in conclusion, Your Honor, for the reasons stated in our briefs, and unless you have questions, we ask that you affirm the decision of Judge Snyder from the trial court. Thank you. Counsel? Okay. Now, Mr. Erstein, I do have a question based on what counsel said. Is it true that as of January of 2010, that the title was free and clear? I believe it was. However, nobody notified Ms. Wade as she testified that it had been resolved. She never got notice. And nobody, Justice Corbin wants to know what's in the record. There's not a whiff of evidence from the title company that they informed her. She had a disastrous building. She had, at that point, an order for demolition, and nobody told her, oh, by the way, we took care of everything. What you have here, and there's two things that I want to respond to that counsel said. First of all, this is a breach of contract case. Okay? On my ability, it's not the judge's discretion. It's right or wrong. They either breached the contract or they didn't. We say they breached the contract because they didn't do. What they did was ultraviolet reach the contract. What they did was try and save time. The only way that their litigation, when they were notified of the foreclosure action, they should have said, well, there's a $39,000 lien. We look at it. We check it out. It's a valid lien. We should pay it and be done. And they would have been done. They wouldn't have had to do anything else. Instead, they chew up. Well, the housing court matter was still. But what they didn't do, what they didn't do was defend her title. If they had been doing that, this would be a different case. And I want to point out, the cases which they cite, which they say, say that longer periods of time are reasonable, didn't say that. The time was not an issue in those cases. Those courts didn't make a pronouncement, even in dictum, on the time. And second of all, in those cases, the litigation that ensued, which chewed up time, was litigation against the cloud on title, which is a legitimate thing for a title company to do. That's not what this title company did in this case. They went off. And what did they do? They knew. They did an appraisal. Tell me, what's the best case to support your position? Show me a case that will support what you're saying. I can't show a case. The cases, we've cited cases in Illinois. I read all the cases that you've cited. I read all the cases in Illinois. And I keep track of them, month by month, for the last 60 years. I know of no case that holds what you're talking about. That an insurance company has an obligation to settle a case at a certain period of time. And any insurance, not just title insurance, but any insurance. We're not saying within a certain period of time. We're saying in a reasonable, diligent manner, which is what the contract says. And the point is that they weren't diligently trying to sell. They were diligently trying to chew up the clock because they knew the property's value was decreasing. They knew that. They got an appraisal that showed it. Their appraisal, not ours, theirs. So they knew if they just waited, they could settle the case for cheaper. That's not allowed under the policy. Each of those cases that you're talking about, they looked in the policy language first. That's the insurance that you bought. And this policy doesn't say you can litigate to lower your cost of settlement. It says you can litigate to assure the title, to protect the title. That's not what they did. If they had challenged the $39,000 mortgage, we wouldn't be here. We wouldn't have a case. That would be entirely different. And you're right. There is no case because the title companies have never tried in a reported case. Because when title companies go off the charts like this and go in the wrong direction, instead of going south, they go north. And when they do that, it doesn't end up in the appellate court. Why? Because they pay off because they've proven wrong. So you're not going to see reported decisions because this case, still the title guarantee did a bad thing. And they're trying to say, oh, it's okay. And I go back to the contract and I say, yes, start there. And they breached that contract by their litigation. And they chewed up the clock, which was not diligent because they weren't trying to settle in the first place. You know, counsel, I'm hearing what you're saying. And I'm just thinking about the contract. If we look at the terms of the contract, you might have won in the trial court because the court may have said three years was an unreasonable time. But you had no indication in this record whatsoever that she gave the notice that the contract requires for over, I think, 12 or 14 months after she discovered the cloud on the title. And the judge only can look at what the judge gets. The judge has her testimony that she discovered the title cloud in, I think, December of 06, a month or two or three weeks after she got it. But she never testified she gave them the written notice that the contract requires. Both people are bound by the contract, counsel. And so the court starts counting when the defense presents the letter that they got from her and the letter that they sent back to her, which eats up a year or so of that time. If you rely on the written notice from her lawyer, then it's 18 to 20 months, although the settlement was not recorded. They took five months to get the release recorded. If you do that, I would say it is still too long. This case should have been settled in 60 to 90 days, period. There was never a defense against the lien on title. They insured it, paid it. That's it. Nothing else. Do you know what our standard of review is in this case? Well, there's three different standards of review, depending on which piece you're talking about. Well, we're talking about facts, the manifest way to the evidence. Yeah. In other words, if we can't substitute our judgment for that of the trial court, we must find that no reasonable judge would have done what he did. In the sense of the evidence, it has to be – we would have to find that there was no evidence to support their position. Your Honor, with all due respect, there's no dispute over the facts here. There is no factual dispute here. The question is – the question – it's a legal question. Did they do what the contract allows? And the answer is no, and that's a legal question. Well, I know of no case that would support your position, but – Well, Your Honor, that's why you're hearing our argument, and that's why we have courts. And maybe we have a case of first impression where a title company does not do what their policy allows. It does something else for their own benefit. And maybe this court should say – not maybe, for sure – this court should say, title companies, you can't do that. You either change the lien, which you can do, or pay it. If the lien is valid and you insure over it, pay it. There's no other defense. Pay it, and pay it right away. Not two years later. Why title insurance? You're going to – you buy a house and there's an undisclosed lien, and you want to sell your house. You've got to wait for the title insurance company for two or three years to decide to pay you? They want to hang on to their money. It's insurance. It's not just – it's not just a lawyer's opinion. It's an insurance policy. They're not insuring. They're saying, well, we have – they're saying, well, we have discretion. And Your Honor, with all due respect, and maybe you just used the words loosely, they don't have discretion on whether or not to pay. It's an insurance policy. They've got to pay. And they go, no, we can fool around. We can litigate this. We can litigate that. We'll pay the lawyers instead of the insured. Sorry. It's insurance. They should pay the insured. It's what they should have done here. And they should have paid right away. 60, 90 days at max. There's nothing else that required time other than waiting for the property to decrease in value so we don't have to pay. If they'd paid it on time, it wouldn't be here. So the property would be rehabbed and there would be three families living in that building. Thank you very much. We didn't mention that Judge Hall is here. Judge Hall is not here today, as you could see, and she will listen to the tapes of this case in our decision-making process. And I want to thank you guys for doing a wonderful job on your arguments and your briefs,  Thank you, Your Honor.